In the Matter of Disciplinary Proceedings Against Gaar W. Steiner, Attorney at Law.

Board of Attorneys Professional Responsibility, Complainant,

v.

Gaar W. Steiner, Respondent.

Supreme Court

*No. 98–1283–D. Filed May 6, 1999.*

(Also reported in 591 N.W.2d 857.)

¶ 1. PER CURIAM. We review the recommendation of the referee that the license of Gaar W. Steiner to practice law in Wisconsin be suspended for 60 days as discipline for professional misconduct. That misconduct consisted of commingling his own funds in his client trust account, disbursing funds belonging to other clients with the effect of benefiting two of his clients, failing to have a safe deposit box in which he held a client's funds clearly designated as a client's account, lending a client money without written documentation of the terms of the loan and without advising the client to obtain the advice of independent counsel and obtaining the client's written consent to the transaction, and knowingly and fraudulently receiving legal fees for bankruptcy work out of the assets of the bankrupt's estate without prior application to and approval of the bankruptcy court.

¶ 2. We determine that the recommended 60-day license suspension, to which the parties had stipulated, is the appropriate discipline to impose for Attorney Steiner's professional misconduct considered in this proceeding. A number of circumstances mitigate the seriousness of that misconduct and the degree of discipline it calls for. Most significant among them are that Attorney Steiner's use of other clients' funds to benefit certain clients resulted from inadvertent overdrafts of Attorney Steiner's trust accounts caused by his staff's arithmetical and posting errors and that his receipt of fees for bankruptcy work without application to and approval of the bankruptcy court was not deliberate but the result of poor accounting practices. Nonethe-

less, the seriousness of Attorney Steiner's misconduct warrants the minimum suspension of his license to practice law.

¶ 3. This matter initially was submitted to the court on a stipulation of the parties pursuant to SCR 21.09(3m).[1] The parties agreed to the facts concerning Attorney Steiner's conduct, the provisions of the Rules of Professional Conduct for Attorneys the conduct violated, and a 60-day license suspension as discipline for it. We rejected the stipulation and directed the matter to proceed before a referee. In that proceeding, the parties submitted a stipulation that differed in only minor, nonsubstantial respects from the stipulation previously submitted, and after holding a hearing, the referee, Attorney Charles Herro, made findings of fact and conclusions of law identical to those set forth in the stipulation.

¶ 4. While a member of large Milwaukee law firm, Attorney Steiner began representing Frank Crivello, a Milwaukee real estate developer, in 1991. In May of 1993 he established his own firm, with his primary clientele being Frank Crivello, Frank Crivello's

---

[1] SCR 21.09 provides, in pertinent part:

**Procedure.**

. . .

(3m) The board may file with a complaint a stipulation by the board and the respondent attorney to the facts, conclusions of law and discipline to be imposed. The supreme court may consider the complaint and stipulation without appointing a referee. If the supreme court approves the stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline. If the supreme court rejects the stipulation, a referee shall be appointed pursuant to sub. (4) and the matter shall proceed pursuant to SCR chapter 22. A stipulation that is rejected has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the board's prosecution of the complaint.

cousin and business associate, Joseph Crivello, and numerous Crivello-related business entities. Attorney Steiner had both business and personal relationships with the Crivellos.

¶ 5. In the fall of 1992, Frank Crivello was negotiating with the mortgagee of a commercial property in Minnesota that one of his entities, Plaza 14, had purchased to resolve problems concerning the loan for that property and other loans involving Plaza 14. The mortgage on the Minnesota property was secured by rental payments from the property that exceeded the amount necessary to amortize the industrial revenue bond by which the purchase had been financed, and in mid-February 1993 Plaza 14 requested and received from the bond trustee some $107,000 in excess rents and deposited it in an out-of-state bank account in Plaza 14's name. The mortgagee knew in April of 1993 that the distribution of excess rents had been made, but it took no steps to obtain them at that time.

¶ 6. When negotiations between Plaza 14 and the mortgagee began to break down in the early fall of 1993 and it appeared to Attorney Steiner that litigation was imminent, he and Frank Crivello executed a contract for legal services on October 1, 1993, but dated as of July 14, 1993, by which Plaza 14 transferred $108,000—the excess rents plus accrued interest—from the out-of-state account to Attorney Steiner's client trust account.

¶ 7. Under the terms of the retainer agreement, Attorney Steiner was to receive a flat fee of $50,000 for a legal audit, other specified services, and services previously rendered, and Plaza 14 was to deposit a retainer of not less than $100,000 in Attorney Steiner's trust account by October 31, 1993. The agreement provided further that Attorney Steiner had the right of

immediate payment from those funds for the legal audit, with any excess to be held and disbursed as provided in the agreement. Notwithstanding those terms, Attorney Steiner did not transfer $50,000 from the trust account to his business account when he received the $108,000. He also did not transfer a nonrefundable $25,000 from the $50,000 retainer specified for "standby availability to perform services and for the performance of services in addition to the legal audit and review."

¶ 8. When the retainer agreement was executed, Attorney Steiner expected it to provide a defense against any attempt by the mortgagee to obtain the $108,000 of excess rents and to pay the defense costs expected to be incurred in anticipated disputes and litigation with the mortgagee. He did not expect or intend to enforce the terms of the retainer agreement against Frank Crivello or Plaza 14 except to the extent Plaza 14 was unable to pay fees he actually earned. The parties understood that Crivello-related entities and individuals would have access to and could withdraw those funds from Attorney Steiner's trust account as long as Attorney Steiner was guaranteed their return to the extent necessary to pay the mortgagee, if required, and to pay his legal fees. In fact, some of those funds were disbursed for Crivello-related entities and to pay Attorney Steiner's fees for services to entities controlled by Frank Crivello that were unrelated to Plaza 14.

¶ 9. The referee concluded that by having the $108,000 deposited into his client trust account under a retainer agreement he had drafted with the intent of protecting funds of his client from a creditor and by characterizing and claiming the funds in part as his own, while retaining them in his trust account and

426

disbursing a portion of them to Joseph Crivello or on behalf of various Crivello entities as requested, Attorney Steiner commingled funds in his client trust account and failed to hold his own funds separate from those of his client, in violation of SCR 20:1.15(a).[2]

¶ 10. From May 1993 until mid-1995, Attorney Steiner's trust account record keeping was done manually by a secretary. After Attorney Steiner discovered various accounting problems in his business account in late 1994 and hired an accountant to review the law firm's records, including the client trust account, it became apparent to him that he had disbursed funds from his trust account on behalf of the Crivellos when there were insufficient funds belonging to them on deposit in that account to cover those disbursements. For example, he disbursed $7,000 to his law firm for Crivello legal fees when the trust account balance of funds belonging to the Crivellos was just under $3,000. As a result, in that instance some $4,000 that had been disbursed in payment of his legal fees belonged to clients other than the Crivellos.

¶ 11. In addition, the manually maintained Crivello trust account ledger contained a number of

---

[2] At the time relevant here, SCR 20:1.15 provided, in pertinent part:

**Safekeeping property.**

(a) A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients or third persons that is in the lawyer's possession in connection with a representation. All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c) maintained in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin, which account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import, and no funds belonging to the lawyer or law firm except funds reasonably sufficient to pay account service charges may be deposited in such an account. . . .

accounting errors, as a result of which the account erroneously appeared to have a positive balance sufficient to cover almost all of the Crivello-related disbursements. In 1994 and 1995, at least 23 payments of trust account funds were made on behalf of the Crivellos when they had insufficient funds on deposit to make those payments. Thus, Attorney Steiner disbursed funds belonging to other clients with a resulting benefit to the Crivellos, and his trust account was out of trust, even though there was only one occasion when the total funds in the trust account were insufficient to pay a check written on it in disbursement of a Crivello-related matter. Following the audit, the trust account was reconciled and appropriate funds were deposited prior to the initiation of the Board of Attorneys Professional Responsibility's (Board) investigation into this matter.

¶ 12. In early 1994, Joseph Crivello asked Attorney Steiner to place $45,000 in cash in a safe deposit box to be opened at Attorney Steiner's bank, directing him to take $5,000 of that amount as payment for legal fees. Attorney Steiner placed the $40,000 cash in a safe deposit box at his bank, but on instructions from Joseph Crivello, that box was in Attorney Steiner's name and was not identified as a depository for the property of clients.

¶ 13. The referee concluded that by disbursing on numerous occasions funds belonging to other clients with the effect of benefiting the Crivellos and by failing to hold the $40,000 in a safe deposit box clearly designated as a client's account or a trust account, Attorney Steiner failed to hold the property of clients appropriately, in violation of SCR 20:1.15(a).

¶ 14. On September 7, 1993, Attorney Steiner wire transferred $35,000 from his personal account to

his client trust account. Almost all of those funds were used to settle a lawsuit between Joseph Crivello and another. That transfer constituted a loan from Attorney Steiner to Joseph Crivello, made at his request, but it was not evidenced by a promissory note, and the terms of the transaction had not been provided to Mr. Crivello in writing. Also, there was no evidence suggesting that Mr. Crivello had been advised to seek the advice of independent counsel in the transaction, and Attorney Steiner did not obtain his written consent to the transaction. The loan was satisfied, and Joseph Crivello did not complain about it. The referee concluded, as the parties had stipulated, that by lending money to his client without any written terms or other documentation, without advising his client to obtain the advice of independent counsel, and without obtaining his client's written consent, Attorney Steiner violated SCR 20:1.8(a).[3]

¶ 15. In March of 1994, after the mortgagee of Plaza 14's property in Minnesota had filed a foreclosure action, Attorney Steiner filed a Chapter 11 bankruptcy petition on behalf of Plaza 14 the day before the scheduled foreclosure sale. In the attorney's statement he filed under the bankruptcy rules, Attor-

---

[3] SCR 20:1.8 provides, in pertinent part:

**Conflict of interest; prohibited transactions**

(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto.

ney Steiner stated that he had not received "a retainer toward legal services rendered or to be rendered in connection with [the bankruptcy] case" and had not received a "transfer, assignment or pledge of property from the Debtor." When Plaza 14's president was questioned under oath in Attorney Steiner's presence at a meeting of creditors concerning the corporation's assets, liabilities, and expenditures, he answered in the negative when asked if Attorney Steiner had been paid a retainer. Attorney Steiner understood the attorney's statement and the creditors' question to relate specifically to the bankruptcy representation.

¶ 16. During the course of the bankruptcy, Plaza 14 disclosed on a monthly basis the accrual of legal fees earned by Attorney Steiner in the bankruptcy. By August of 1994 the accrued and disclosed fees totaled $17,004. Attorney Steiner subsequently was charged in federal court with two misdemeanor counts of knowingly and fraudulently entering into an agreement to be paid legal fees for bankruptcy work out of the assets of the debtor without disclosing those payments to the bankruptcy court, based on two undisclosed payments to him in August 1994 totaling $11,532.50, the source of which was stipulated to have been the $108,000 he received under the contract for legal services with Frank Crivello and Plaza 14 six months prior to the bankruptcy filing. Attorney Steiner entered into a plea agreement and pleaded guilty to both counts and was convicted, placed on three years' probation, as a condition of which he was given 180 days of home confinement with electronic monitoring, and fined $10,000.

¶ 17. The referee concluded, as the parties stipulated, that by knowingly and fraudulently receiving legal fees for bankruptcy work out of the assets of the

estate of Plaza 14 without prior application to and approval of the bankruptcy court, Attorney Steiner committed criminal acts reflecting adversely on his honesty, trustworthiness or fitness as a lawyer in other respects, in violation of SCR 20:8.4(b).[4]

¶ 18. As discipline for that professional misconduct, the referee recommended that Attorney Steiner's license to practice law be suspended for 60 days—the discipline to which Attorney Steiner and the Board had stipulated throughout this proceeding. In recommending that discipline, the referee explicitly took into account that the fraudulent acts of Attorney Steiner's clients carried over to him and that the bankruptcy petition giving rise to this disciplinary proceeding was dismissed shortly after it was filed, thereby returning the parties to their former positions. In addition, the record discloses that the Board acknowledged it was unable to produce clear and satisfactory evidence to establish that Attorney Steiner's trust account was being used to conceal his clients' assets. Further, when Attorney Steiner withdrew funds from his trust account in payment of his fees, he inadvertently offset some of them against invoices that included services rendered and costs incurred in the bankruptcy itself. It appeared that Attorney Steiner easily could have received court approval for payment of those fees. Moreover, he made no attempt to conceal the payment

---

[4] SCR 20:8.4 provides, in pertinent part:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; .

of fees and costs from the bankruptcy court; it was disclosed in the monthly report he filed with the court.

¶ 19. We adopt the referee's findings of fact and conclusions of law and determine that the seriousness of Attorney Steiner's professional misconduct, mitigated by the circumstances present, warrants the suspension of his license to practice law for 60 days. In addition, we require Attorney Steiner to pay the costs of this proceeding.

¶ 20. IT IS ORDERED that the license of Gaar W. Steiner to practice law in Wisconsin is suspended for a period of 60 days, commencing June 21, 1999.

¶ 21. IT IS FURTHER ORDERED that within 60 days of the date of this order, Gaar W. Steiner pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Gaar W. Steiner to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 22. IT IS FURTHER ORDERED that Gaar W. Steiner comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.